**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ALBA C. ROMAN-VARGAS,**<br>        **Plaintiff**<br><br>         **v.**<br><br>**JO ANNE B. BARNHART, Commissioner**<br> **of Social Security,**<br>         **Defendant** | **Civil No. 04-1832(SEC)** |

<u>**MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION**</u>

Plaintiff Alba C. Román-Vargas (hereafter "Román") filed a complaint seeking judicial review of the decision of the defendant, Jo Anne B. Barnhart, Commissioner of Social Security (Commissioner) denying her disability benefits pursuant to Title II of the Social Security Act (**Docket No. 1**). Román asks for judgment reversing the determination of the Commissioner and that benefits be allowed. The Commissioner answered the complaint and filed a memorandum of law in support of his decision (**Docket Nos. 5, 10**). Román  also filed a memorandum of law in support of her claim (**Docket No. 11**).  The matter was referred to the undersigned for Report and Recommendation (**Docket No. 6**).

After careful review of the administrative record and the briefs on file, it is hereby **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and that the plaintiff's case be **DISMISSED**.

**I.      Factual and Procedural Background**

Román was born on November 22, 1937,  has a high school education and two years of secretarial courses  (Tr. 59, 219). She has past relevant work as a secretary (Tr. 59, 191-98, 205-209).  Román filed the current application for disability insurance benefits on July 5, 1999,  alleging an inability to work since December 16, 1987, due to a back condition, arthritis and pinched nerves in her hands (Tr. 29, 171).

Román's current application was denied initially (Tr.82-84) and on reconsideration (Tr. 86-89) by the Social Security Administration.  She requested an administrative hearing on her

application for disability benefits, which was held on September 26, 2000 (Tr. 91). Román testified at the hearing . A decision was issued on October 26, 2000, by Administrative Law Judge Jerry J. Bassett denying her benefits (Tr. 77-81). Román disagreed with the decision and filed a request for review of the ALJ's decision. However, the Appeals Council, after considering additional evidence, rejected petitioner's request and affirmed the ALJ's decision, rendering it the final decision of the Commissioner of Social Security (Tr.107-108).

Román next sought review before this District Court and the Court entered an Order remanding the matter to the Commissioner for additional proceedings (Tr. 114). On October 19, 2002, the Appeals Council remanded the case to an ALJ for further proceedings (Tr. 109-110). A supplemental hearing was held on August 14, 2003 (Tr. 44-66). Again Román testified, as did medical expert, Dr. Germán Malaret. On December 19, 2003, Administrative Law Judge Peggy Ball (hereafter "ALJ") again concluded that Román was not under a disability (Tr. 23-34). Román sought review by the Appeals Council, but it found no reason to assume jurisdiction, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 7-9). Román now challenges the Commissioner's decision (**Docket No. 1**).

**II.      The ALJ's Decision and the Appeals Council**

In the written opinion dated December 19, 2003, the ALJ engaged in a review of the documentary evidence submitted and the testimony provided. In finding that Román was not suffering from a disability, the ALJ applied the evaluation process mandated by law. *See* Discussion Section, *Infra*. This evaluation process produced the following conclusions:

1) Román  met the nondisability insured status requirements and was insured for benefits through June 30, 1995 (Tr. 33).

2) Román had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 33).

3) Román has an impairment or combination of impairments considered severe based on the requirements in 20 C.F.R. 404.1520(b). These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4 (Tr. 33).

4) The allegations regarding plaintiff's limitations are not totally credible (Tr. 33).

5)  Petitioner retains the residual functional capacity to lift and carry weights of up to 20 pounds, stand, walk up to six hours.  There are no further limitations (Tr. 34).

6)  Román's past relevant work as a secretary did not  require the performance of work related activities precluded by her residual functional capacity (Tr. 34).

7)  Román's medically determinable degenerative changes of the discs at L5-S1 and L4-L5, lumbar myalgia and obesity do not prevent her from performing her past relevant work (Tr. 34).

8)  Claimant was not under a "disability" as defined in the Social Security Act, at any time through the June 30, 1995 (Tr. 34).

The evidence on record reflects that Román sustained a work related injury on December 16, 1987, injuring her waist, left shoulder and arm.  She testified that December 16, 1987, was the last day she worked (Tr. 30). In reviewing the medical evidence of record, the ALJ found that the same supports the conclusion that Román has degenerative changes of the discs at L5-S1, and L4-L5, lumbar myalgia and obesity (Tr. 30).  The ALJ reviewed the medical records specifically referring to the records from the State Insurance Fund, Drs. Zapater, Rodríguez, Vega, Riestra, Martínez, Colón-Pagán, as well as the testimony of Dr. German Malaret (Tr. 30-32).

The ALJ found Román's statements regarding her impairments and her ability to work not entirely credible, pointing to discrepancies between her assertions and the information contained in the record (Tr. 32).  The ALJ specifically noted that tests performed on Román revealed results that were essentially within normal limits (Tr. 32).  The ALJ concluded that the clinical findings reported by Román's treating physicians were essentially normal and that there was no evidence of loss of strength, or significant range of motion limitations (Tr. 32). Also, it was noted that the medications taken by Román are of a non-narcotic, mild analgesic character (Tr. 32).  Finally, the ALJ found this fact supported a conclusion that Román only suffers from a mild discomfort that does not further diminish her residual functional capacity (Tr. 32).  The ALJ noted that while Román claims a nervous condition, there is not evidence on record of a medically determinable mental impairment (Tr. 32).

With regard to Román's residual functional capacity, the ALJ determined that Román

retains the ability to lift and carry weights up to 20 pounds, and that she can  stand and walk for six hours, with no further limitations (Tr. 33).

The ALJ then explored Román's past relevant work as a secretary, noting that the job required Román to engage in activities of a sedentary character, which were carried out in an office environment (Tr. 33).  The ALJ compared Román's residual functional capacity with the requirements of her past relevant work and determined that she could do that job as performed in the national economy and as previously performed by her (Tr. 33)  Accordingly, the ALJ concluded that Román is not disabled.  *Id.*

On January 10, 2004, Román  filed a request for the Appeals Council to review the ALJ's decision.  However,  the Appeals Council found no reason to assume jurisdiction, so that  the ALJ's decision became the final decision of the Commissioner of Social Security.

## III.   Conclusions of Law

### A.   Legal Standard

The Court's review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*,  172 F.3d 31, 35 (1st Cir. 1999); *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir. 1986); *Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir.1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant  is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months".  42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R.  §§ 404.1520; *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6-7 (1ˢᵗ Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied. §§ 404.1520(b).  If she is not, the decision-maker proceeds to step two, through which the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d);  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled. §§ 404.1520(e).  If the claimant cannot perform this work,

the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of her residual functional capacity, as well as her age, education, and work experience. The claimant is entitled to disability benefits only if she is not able to perform other work. §§ 404.1520(f).

The claimant has the burden, under steps one through four, of proving that she cannot return to her former employment because of his alleged disability. *Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. *Ortíz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

A "claimant is not entitled to disability benefits unless she can demonstrate that her disability existed prior to the expiration of her insured status." *Cruz- Rivera v. Secretary of Health and Human Services*, 818 F.2d 96, 97 ( 1st Cir. 1987). "It is not sufficient for a claimant to establish that her impairment had its roots before the date that her insured status expires. Rather, the claimant must show that her impairment(s) reached a disabling level of severity by that date." *Moret-Rivera v. Secretary of Health and Human Services,* No. 93- 1700, 1994 WL 107870, at *5 (1st Cir. March 23, 1994) (citations omitted). However, medical evidence generated after the claimant's insured status expires may be considered for what light, if any, it sheds on the question of whether claimant's impairment(s) reached disabling severity before claimant's insured status expired. *Id.* (citations omitted).

**B.     Analysis**

The ALJ concluded at step four of the sequential evaluation process that Román retained the residual functional capacity to lift and carry weight up to 20 pounds at a time, and stand/walk up to six hours, without further limitations. The ALJ further found that Román was not prevented from performing her past relevant work as a secretary. Consequently, the ALJ concluded that Román was not disabled as defined in the Social Security Act, through the

date she was last insured, that is; June 30, 1995.

It is clearly established that at step four of the sequential evaluation process, a claimant must be found not disabled if she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job. *See Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1ˢᵗ Cir. 1991). In making such determination the ALJ should examine the demands and duties of the former job as the claimant actually performed it. *Id.* In this process, the claimant is the primary source for such information, and statements by the claimant regarding past work are generally sufficient for determining the skill level and exertional demands of such work. *Id.*

A claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform: 1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *SSR 82-61 Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed*.

Román argues that the Commissioner's decision is not supported by substantial evidence on the record as a whole. More particularly, Román contends that the ALJ erred in not engaging the services of a vocational expert; she takes exception to the testimony of Dr. Malaret; contends that the ALJ erred in finding she could perform her past relevant work; and asserts that the ALJ did not consider her complaints of pain and positional limitations; while citing evidence favorable only to the Commissioner.

The time period in question is from December 16, 1987 through June 30, 1995, the date Román was last insured.

### 1.    Vocational Expert

Román contends that the ALJ should have engaged the services of a vocational expert in light of her complaints of pain and because she cannot remain seated for long periods of time. At Step 4 of the disability determination process, however, the ALJ is not required to elicit the testimony of a vocational expert. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376

(10th Cir. 1992) (holding that because claimant failed to meet his burden of establishing a disability which prevented him from performing his past relevant work, "the ALJ was under no obligation to elicit the testimony of a vocational expert"). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Social Security Ruling 82-62.

In claimant's application for disability insurance benefits she described the basic duties in her former job as a secretary.  She testified at the September 26, 2000,  hearing before the ALJ that her impairments precluded her from performing her past work as a secretary.  She testified that as a secretary she sat most of the day, but after she was injured she could sit no more than one hour before she felt cramps in her thigh and leg (Tr.  97-98). As a secretary she was required to answer telephones, file and take care of the public (Tr. 100).  She further testified that if she tried to return to her position as a secretary she would last about two hours before the pain became unbearable (Tr. 98).  Petitioner indicated that she also has pain that affects her neck and shoulders.  *Id*.

During the August 14, 2003, hearing Román testified that as a secretary she typed, tended to the public, wrote correspondence, prepared payroll, contracts, and reports, attended the telephones, filed, and did many other things (Tr. 59). She sat all the time. *Id*. Román testified that following her accident in 1987 she received treatment for two years, and never returned to work, but retired with 30 years of service (Tr. 60-62).  The treatment consisted of therapy, injections, and medications (Tr. 61).  She testified that she received injections for pain during the two year period, and such treatment alleviated her pain (Tr. 61). She stated that during that two year period she could not do anything (Tr. 62).  She also indicated that she had difficulty walking, but could not recall how frequently this occurred (Tr. 62).  Román indicated that after the two year treatment period ended, she received treatment on an intermittent basis and at times she would feel better, while other times she did not (Tr. 62).  Currently she is unable to do household chores and experiences difficulties

while dressing  (Tr. 62).  When asked if there was anything else that limited her ability to work prior to 1995, she stated that by 1995 she was already retired, having retired in January 1990 (Tr. 63).    Later she testified that pain limits her ability to work (Tr. 65).

The ALJ did not find claimant's allegations of limitations credible so as to preclude performance of her past relevant work credible. "The credibility determination by the ALJ who observed the claimant, evaluated her demeanor, and considered how that testimony fit in with the rest of the evidence is entitled to deference,  . . ." *Frustaglia v. HHS*,  829 F.2d 192, 195 (1st Cir. 1987). Based upon the evidence of record, the ALJ did not err in failing to elicit the testimony of a vocational expert regarding Román's capacity to perform her past relevant work as a secretary.

### 2.    Medical Expert

Román also takes exception to the testimony provided by the medical expert, Dr. Germán Malaret (hereafter "Dr. Malaret").  She contends that Dr. Malaret's appreciation of the medical evidence was erroneous.  She bases her allegations on her interpretation of his testimony.   According to petitioner, Dr. Malaret's testimony "appears to indicate that medically speaking, the claimant's award of 25 percent permanent partial disability was not justified, not even by the medical doctors who evaluated the claimant during the crucial period".

The testimony referred to by Román is Dr. Malaret's response to the question, "Is it possible to tell from the file on what basis the Fund gave her a 25 percent disability?" (Tr. 52-53).  What Dr. Malaret actually responded was that  "one of the physicians who commented on that put a question mark beside it.  He didn't know why she was given 25 percent disability.  He says that she was discharged with a 25 percent disability and I don't know why" (Tr. 53).  It is clear from reading the transcript, that Román's interpretation of Dr. Malaret's testimony is erroneous.  What he testified to is, that he did not know why Román was awarded 25 percent partial disability, not that it was not justified.  Román's error of contention is without merit.

### 3.    Past Relevant Work

Román next argues that the ALJ erred in determining that she could perform her past relevant work as a secretary.  She argues that the evidence of record shows a panoply of physical impairments that would appear to have an adverse impact on her ability to perform her past relevant work on a sustained basis.  Further, she argues these impairments also have a substantial effect on the available occupation base.  More so, considering her advanced age of 57 on the date she was last insured.  Finally, Román argues that the ALJ is not medically or vocationally equipped to summarily conclude that Román was not disabled, much less that she could perform her past relevant work.

The ALJ determined that Román could perform her past relevant work as a secretary. The ALJ further determined that Román can lift and carry weights up to 20 pounds and stand/walk for up to six hours  (Tr. 34).  This is basically a determination that Román could perform light work.

In her work history report Román described her job as requiring her to work 7 ½ hours per day (Tr. 214, 222).  The job required her to walk one hour per day, stand one hour per day, sit five hours per day, and frequently bend and reach (Tr. 195, 198).    As discussed above, at the hearings before the ALJ,  Román  testified that she could not have performed her job as a secretary.

It must be noted that petitioner's residual functional capacity as determined by the ALJ meets the definition of at least sedentary work and light work.    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to substantially perform all of these activities.  20 C.F.R. § 404.1567(b).  Additionally, the regulations define light work as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10.

A Physical Residual Functional Capacity Assessment was completed by Dr. Acisclo M. Marxuach (hereafter "Dr. Marxuach") on November 4, 1999 (Tr. 376-383). Through the same, it was determined that Román could occasionally lift 50 pounds and frequently lift 25 pounds (Tr.377). Also that Román could stand and/or walk about 6 hours in an 8-hour day and sit about 6 hours in an 8-hour day (Tr. 295). Dr. Marxuach found Román unlimited in her pushing and/or pulling (Tr. 377). There were no postural, manipulative, visual, communicative or environmental limitations (Tr. 378-381). The assessment was affirmed as written by Dr. Vincente R. Sánchez-Quiles (Tr. 383).

This assessment conforms with the requisites set forth by the First Circuit Court of Appeals. In *Berríos López v. Secretary of Health and Human Services*, 951 F.2d 427, 431 (1st Cir. 1991), the First Circuit found the reports of two non-examining, non-testifying physicians to constitute substantial evidence of the ALJ's finding regarding claimant's residual functional capacity because: 1) the reports contained written comments and medical conclusions rather than just "the mere checking of boxes denoting levels of residual functional capacity," 2) the

reports were consistent with each other and 3) the  physicians had available to them most, although not all, of the medical evidence for their review.   This is precisely what the record contains in the instant case.

Also, at the hearing on August 14, 2003, medical expert Dr. Germán Malaret testified that prior to June 30, 1995, Román had a number of diagnoses, but no significant limitations (Tr. 49).  For example, Dr. Malaret indicated that Roman had low back pain and lumbar strain (Tr. 49).  In 1988 she was diagnosed with early polar neuropathy (Tr. 49).  He also testified that Román was treated for carpal tunnel syndrome and had improved (Tr. 50).  In 1992 Román complained of cervical pain and upper dorsal areas, but testing indicated no discogenic disease, no significant spondylosis (Tr. 50).  All x-rays were negative (Tr. 50).  Dr. Malaret further testified that Román had no listing level severity conditions prior to June 30, 1995 (Tr. 51).  He opined that prior to June 30, 1995, the only limitations expressed by Román were those that related to her obesity, she had complaints of upper dorsal pains, but there was no objective evidence supporting it (Tr. 52).  He further stated that muscle spasms would probably limit Román's ability to lift and push because of the pain (Tr. 52).  He opined that Román could lift five to ten pounds, depending upon the degree or intensity of the pain (Tr. 52).   Dr.  Malaret  further  testified  that  he  observed  no  limitation  in  the  range  of movement in any joint and no indication of loss of muscle mass or muscle strength (Tr. 53-54).  He noted that Román has degenerative arthritis in the lumbosacral spine (Tr. 55).

Despite the foregoing, Román contends that she does not have the residual functional capacity to perform her past relevant work.  Nonetheless, the medical records do not support Román's claims.  More so, contrary to Román's contention, the ALJ did not interpret the vocational factors, but instead relied upon the medical records and testimony received. Indeed, the ALJ's findings regarding her condition, as the results of medical tests; are basically normal with the exception of her complaints of pain.  Additionally, as discussed below, the ALJ found said allegations of pain not totally credible.

### 4.    Pain

Román argues that the ALJ failed to give proper consideration to her complaints regarding the existence of painful conditions and of her inability to remain in the same position for extended periods of time.

When a claimant alleges disability due to pain, in assessing the claimant's residual functional capacity, the ALJ must first determine whether the claimant has a medically determinable impairment that is reasonably likely to produce the pain claimed. 20 C.F.R. § 404.1529(a) and (b); *Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir. 1999). If so, the ALJ must assess the severity of the pain and the extent to which pain impedes the claimant's ability to work by considering all of the pertinent evidence of record including "claimant's statements, opinions of treating physicians, reports of claimant's activities and claimant's course of treatment." *Id., see also Daresay v. Secretary of Heath and Human Servs*., 803 F.2d 24, 25-26 (1st Cir. 1986). "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Secretary of Health and Human Servs*., 869 F.2d 622, 623 (1st Cir.1989).

Additionally, when a claimant complains that pain or other subjective symptoms are a significant factor limiting the ability to work, and those complaints are not fully supported by medical evidence contained in the record, the ALJ must undertake further exploration of other information.  *Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 23 (1st Cir.1986). In so doing, the ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate her pain; (5) treatment, other than medication, the claimant receives or has received for relief of her pain; (6) any measures the claimant uses or has used to relieve pain; and (7) other factors concerning the claimant's limitations and restrictions due to pain. *20 C.F.R. § 404.1529(c)(3); See Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 29-30 (1st Cir.1986); SSR 88-13.  In addition to considering the

foregoing factors, the ALJ is entitled to observe the claimant, evaluate his demeanor, and consider how the claimant's testimony fits with the rest of the evidence. *See Frustaglia v. Secretary of Health and Human Servs*., 829 F.2d 192, 195 (1st Cir.1987).

The record in this case clearly demonstrates that the ALJ made specific mention of Román's statement concerning her impairments and their impact on her ability to work, finding such statements and claims not entirely credible.  The ALJ based his finding upon the discrepancies between Román's assertions and the information contained in the documentary reports and medical evidence.  The ALJ specifically noted that the numerous tests performed on Román have provided results essentially within normal limits.   More so, the ALJ considered, in making such determination; the type of medications that Román was taking, noting that these were of a non-narcotic, mild analgesic character, fact which provided support to a finding of mild discomfort.

It is evident after reviewing the evidence of record and the decision of the ALJ that Román's argument regarding the ALJ not giving adequate consideration to her complaints of pain and to her physical limitations; are not borne out by the record.

### 5.    Evidence

Román next argues that the ALJ cited only evidence favorable to the Commissioner.  The undersigned disagrees.  While an ALJ is not required to address all of the evidence in the record, the "ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause." *Lord v. Apfel*, 114 F.Supp.2d 3, 13 (D.N.H. 2000).  More so, to determine whether a claimant is disabled, an ALJ must consider and evaluate all evidence, whether objective or subjective, that is relevant to the claim.  *Levesque v. Barnhart*, No. Civ.A. 01-11206-RGS, 2002 WL 1913029 *6 (D.Mass. Aug. 20, 2002) (citations omitted).

In reviewing the ALJ's decision it is clear that  all evidence favorable and unfavorable; was considered.  Indeed, the ALJ discusses the evidence in detail, explaining why he accorded weight to certain evidence but not to other evidence. Contrary to plaintiff's position, the ALJ did consider evidence favorable to Román.  It goes without saying, however, that in concluding that

Román is not entitled to disability benefits, the ALJ certainly relied upon evidence unfavorable to Román. Nevertheless, the ALJ's decision is supported by substantial evidence in the record.

### 6.      Substantial Evidence

Finally, Román appears to make the wholesale argument that the ALJ's decision of 'no disability' is not substantially supported by the record as a whole.

In this regards, petitioner must be mindful that courts are not to re-weigh the evidence or substitute their judgment for that of the Commissioner when the record before the administrative agency has been comprehensive and thorough. *Colón v. Secretary of Health & Human Serv.*, 877 F.2d 148 (1st Cir. 1989). Here, the Court considers whether the decision of the ALJ is supported by substantial evidence.  Substantial evidence has been defined as "more than a mere scintilla" and "such as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Accordingly, judicial review of social security claims is limited to determining whether the ALJ used proper legal standards and found facts upon the proper quantum of evidence. *Ward v. Commissioner*, 211 F.3d 652, 655 (1st Cir. 2000).

In the case at bar the ALJ used the correct legal stands and relied upon the evidence submitted in the record.  After examining the record as a whole, the undersigned determines that the decision of the Commissioner is supported by substantial evidence.

## IV.   Conclusion

For the reasons stated above, this Magistrate-Judge, having scrutinized the record and completed an independent assessment of the evidence, finds that the decision of the ALJ is supported by substantial evidence. As such, it is **RECOMMENDED** that the ALJ's decision be **AFFIRMED**  and  the plaintiff's case be **DISMISSED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and

Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986*); Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

        **SO RECOMMENDED**.

    At San Juan, Puerto Rico, on this 10th day of August, 2005.


                                        S/**AIDA M. DELGADO-COLON**
                                        **U.S. Magistrate-Judge**